1  **WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Elizabeth Ann Perez,<br><br>  Plaintiff,<br><br>vs.<br><br>Michael J. Astrue, Commissioner of Social Security Administration,<br><br>  Defendant. | No. CV 10-01887-PHX-NVW<br><br>**ORDER** |

Elizabeth Ann Perez seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her disability insurance benefits and supplemental security income under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I.  Background**

  **A.  Factual Background**

Perez was born on November 23, 1971. She was 34 years old on the alleged disability onset date, February 15, 2006. She has been diagnosed with rheumatoid arthritis, degenerative disk disease, narrowing of the spine, and depression. In 2008, she had carpal tunnel surgery on each of her wrists. She has a high school education and

most recently worked as a tax preparer. At the time of the administrative hearing, Perez weighed 290 pounds and was 5' 4" tall.

### B. Procedural History

On September 1, 2006, Perez protectively applied for disability insurance benefits and supplemental security income. She alleged disability beginning February 15, 2006. Perez's claims were denied initially on April 19, 2007, and upon reconsideration on November 21, 2007. On January 7, 2008, Perez filed a written request for hearing. She appeared and testified at a hearing held on November 19, 2008, at which she was represented by counsel. The ALJ did not call a vocational expert to testify.

On February 27, 2009, the ALJ issued a decision that Perez is not disabled within the meaning of the Social Security Act. Subsequently, the Appeals Council denied Perez's request for review of the hearing decision. Therefore, the ALJ's decision became the Commissioner's final decision. On September 3, 2010, Perez sought review by this Court.

## II. Standard of Review

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

1 | The ALJ is responsible for resolving conflicts in medical testimony, determining
2 | credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.
3 | 1995). In reviewing the ALJ's reasoning, the court is "not deprived of [its] faculties for
4 | drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes v.*
5 | *Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

### III. Five-Step Sequential Evaluation Process

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). If the ALJ determines that the claimant is disabled or not disabled at any step, the ALJ does not continue to the next step. The claimant bears the burden of proof on the first four steps, but at step five, the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At the step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meet or equal an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

**IV. Analysis**

The ALJ found that Perez meets the insured status requirements of the Social Security Act through September 30, 2011, and, at step one, she has not engaged in substantial gainful activity since February 15, 2006. At step two, the ALJ found that Perez has the following severe impairments: rheumatoid arthritis, degenerative disk disease, narrowing of the spine, and depression. At step three, the ALJ found that Perez does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Perez challenges the ALJ's residual functional capacity assessment at step four and his step five conclusion that there are jobs that exist in significant numbers in the national economy that Perez can perform.

**A. The ALJ Did Not Err in Weighing Medical Source Evidence.**

**1. Legal Standard**

In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight should be given to the opinion of a treating physician than to the opinions of non-treating physicians. *Id.* A treating physician's opinion is afforded great weight because such physicians are "employed to cure and [have] a greater opportunity to observe and know the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987). Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. *Lester,* 81 F.3d at 830. Moreover, the Commissioner must give weight to the treating

physician's subjective judgments in addition to his clinical findings and interpretation of test results. *Id.* at 832-33.

Further, an examining physician's opinion generally must be given greater weight than that of a non-examining physician. *Id.* at 830. As with a treating physician, there must be clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician, and specific and legitimate reasons, supported by substantial evidence in the record, for rejecting an examining physician's contradicted opinion. *Id.* at 830-31.

The opinion of a non-examining physician is not itself substantial evidence that justifies the rejection of the opinion of either a treating physician or an examining physician. *Id.* at 831. "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957. Factors that an ALJ may consider when evaluating any medical opinion include "the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; [and] the specialty of the physician providing the opinion." *Orn*, 495 F.3d at 631.

Moreover, Social Security Rules expressly require a treating source's opinion on an issue of a claimant's impairment be given *controlling* weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). If a treating source's opinion is not given controlling weight, the weight that it will be given is determined by length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, relevant evidence supporting the opinion, consistency with the record as a whole, the source's specialization, and other factors. *Id.*

Finding that a treating physician's opinion is not entitled to controlling weight does not mean that the opinion should be rejected:

> [A] finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §404.1527. . . . In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

*Orn*, 495 F.3d at 631-32 (quoting Social Security Ruling 96-2p). Where there is a conflict between the opinion of a treating physician and an examining physician, the ALJ may not reject the opinion of the treating physician without setting forth specific, legitimate reasons supported by substantial evidence in the record. *Id.* at 632.

### 2. The ALJ Did Not Err in Weighing Treating Physician Dr. Holly E. Rooney's Mental and Physical Assessments.

Perez contends the ALJ erred by failing to consider Dr. Rooney's mental assessment and by rejecting Dr. Rooney's physical assessment. However, the ALJ was not required to consider Dr. Rooney's mental assessment and provided specific and legitimate reasons supported by substantial evidence for rejecting Dr. Rooney's contradicted physical assessment.

Dr. Rooney was Perez's primary care physician from May 16, 2007, through at least October 24, 2008. On September 7, 2007, Dr. Rooney completed a form titled "Medical Source Statement of Ability to Do Work Related Activities (Mental)." On the form she indicated that Perez had no limitation in her ability to understand, remember, and carry out simple and detailed instructions, sustain an ordinary routine without special supervision, work and get along with others, make simple work related decisions, adhere to basic standards of neatness and cleanliness, and set realistic goals or make plans independently of others. The only category in which Dr. Rooney checked "markedly limited (poor or none)" was "the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." She stated

this conclusion was based on the following findings: "The multitude of physical symptoms & the depression hinder steady work pace & duration." Under "additional comments," Dr. Rooney wrote: "Depression definitely limits pt's abilities but her physical diagnoses are the most dominantly disabling factors."

The record does not show that Dr. Rooney provided mental health care for Perez, only physical health care. Therefore, Dr. Rooney is not a treating physician for mental health assessment. Further, even though Dr. Rooney stated Perez's psychologically based symptoms would markedly limit her ability to complete a normal workday and workweek, she indicated that Perez's depression was not as disabling as her physical diagnoses. Therefore, the ALJ did not err by failing to accept, reject, or discuss Dr. Rooney's September 2007 assessment of Perez's work-related mental limitations as Perez contends.

On October 24, 2008, Dr. Rooney completed a form titled "Medical Assessment of Ability to Do Work Related Physical Activities." She checked boxes to indicate that Perez is able to occasionally lift and/or carry less than 10 pounds, stand and/or walk for less than 2 hours in an 8-hour work day, and sit less than 6 hours in an 8 hours in an 8-hour workday. She also indicated that Perez could never climb, balance, stoop, kneel, crouch, or crawl and could use either hand occasionally for handling, fine manipulation, feeling, and reaching.

The ALJ stated he did not afford "any significant weight" to the opinion of Perez's treating physician Dr. Rooney because her opinions appear "on a fill-in-the-blank form," she "failed to cite any medical testing results or objective observations to support her conclusions as to the claimant's residual functional capacity," and her opinion conflicted with the substantial evidence of record that documented less severe limitations. These specific, legitimate reasons for giving Dr. Rooney's physical assessment little weight are supported by substantial evidence, including Perez's testimony that she is able to read,

watch television, change her son's diapers, dress her younger children, and go grocery shopping and that medication improved her rheumatoid arthritis symptoms.

### 3. The ALJ Did Not Err by Failing to Provide Sufficient Reasons to Reject Examining Psychologist Dr. Stephen Hirdes' Assessment.

Perez contends "[t]he ALJ erred by failing to provide sufficient reasons to reject the assessment of the examining psychologist." She states that although the ALJ purported to give Dr. Hirdes's assessment significant weight, he disregarded Dr. Hirdes's determination that Perez had moderate limitations in nine areas.

On September 5, 2007, State agency psychologist Dr. Hirdes examined Perez. His assessment procedures included a mini-mental state exam, clinical interview, behavioral observations, and review of records. In addition to a narrative report, Dr. Hirdes completed a Medical Source Statement of Ability to Do Work Related Activities (Mental) in which he opined that she was "moderately limited (fair/limited but not precluded)" in the following abilities: maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and set realistic goals or make plans independently of others. Dr. Hirdes did not assess Perez as being "markedly limited (poor or none)" in any area. In other words, Dr. Hirdes did not opine that Perez's mental impairments precluded full-time work.

In his hearing decision, the ALJ stated:

> The claimant saw Steven Hirdes, Ed.D., for a mental consultative
> examination. Dr. Hirdes opined that there were no indications of a formal

> thought disorder, delusions or hallucinations. Judgment and insight were deemed to be in the fair to good range. Informal assessment of intellectual functioning suggested the average range and the possibility of underlying learning disorder were also indicated. She was oriented to specific time, date and place as well as name, date of birth and age. The doctor further opined that the claimant had depressive disorder not otherwise specified with agitation (Exhibit 19F).
>
> . . . .
>
> Pursuant to 20 CFR § 404.1527, the undersigned assigns significant weight to these opinions, as they are well-supported by the medical evidence, including the claimant's medical history and clinical and objective signs and findings as well as detailed treatment notes, which provides a reasonable basis for claimant's chronic symptoms and resulting limitations. Moreover, the opinions are not inconsistent with other substantial evidence of record. In addition, these physicians are examining sources who are familiar with Social Security Rules and Regulations and legal standards set forth therein and best able to provide a superior analysis of the claimant's impairments and resulting limitations.

The ALJ did not reject Dr. Hirdes's mental assessment. He was not required to restate each of Dr. Hirdes's opinions, especially his opinions that Perez had moderate limitations, but was not precluded from maintaining attention and concentration for extended periods; performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; etc.

**B.     The ALJ Did Not Err in Evaluating Perez's Credibility.**

In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, the ALJ is required to engage in a two-step analysis: (1) determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if so with no evidence of malingering, (2) reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection. *See Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). To support a lack of credibility finding, the ALJ is required to point to specific facts in the record that demonstrate that Perez is in less pain than she claims. *Id.* at 592.

To be found credible regarding subjective pain or fatigue, a claimant is not required to: (1) produce objective medical evidence of the pain or fatigue itself, or the severity thereof; (2) produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom; or (3) show that her impairment could reasonably be expected to cause the severity of the alleged symptom, only that it could reasonably have caused some degree of the symptom. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

First, the ALJ found that Perez's medically determinable impairments could reasonably be expected to cause the alleged symptoms. The ALJ did not make a finding of malingering. Second, the ALJ found Perez's statements regarding the intensity, persistence, and limiting effects of the symptoms not credible to the extent they are inconsistent with the ALJ's residual functional capacity assessment.

Perez testified that she lived with her parents and her three children, who at the time were fourteen, three, and one years old. She said she was inactive because of pain from rheumatoid arthritis, which caused her to gain 70 pounds over the previous two years. She said she also had pain in her right ankle, both wrists, both hands, fingers, and lower back. She said she did not do any cooking, washing dishes, washing laundry, house cleaning, or exercising, but she did read, change her baby's diapers, and dress both of the younger children. She said that she usually went grocery shopping weekly and would spend about 30 minutes at the store. She testified that she used a motorized cart for shopping.

Perez described pain, stiffness, and swelling she experienced in both of her wrists and both of her ankles. She said she also felt a sharp, burning pain in her right ankle, lower back, both elbows, and both hands. She said that the pain was alleviated by laying down for 20 or 30 minutes and somewhat alleviated by medications. She said her pain was worse if she stands for more than 30 minutes. She said she could sit for 30 to 40

minutes and then she needed to stand up. She further testified that in a typical 9:00 to 5:00 day, she would spend about four and a half hours laying down.

Perez also testified that the carpal tunnel surgery had not helped her left hand at all, but her right hand was not as numb after the surgery. She said she continued to have arthritic pain in both hands. She said the epidurals did not help her back pain at all.

She also said she had depression and anxiety with panic. She said she did not leave her house anymore and did not see or talk on the telephone with friends. She said she was depressed and always cries, except around her children.

The ALJ provided specific, clear, and convincing reasons for rejecting Perez's subjective testimony. *See Vasquez*, 572 F.3d at 591. He also pointed to specific facts in the record that demonstrate that Perez is in less pain than she claims although some of his "facts" were incorrect. For example, he stated that Perez admitted at the hearing that the medications she takes help and he incorrectly described them as medications for rheumatoid arthritis, but her testimony did not identify which medications helped which condition. Also, the ALJ incorrectly said that Perez testified that the epidural injections helped with her back condition, and she said they did not help at all. Further, the ALJ said she testified that the carpal tunnel surgeries did not help, but in fact, she said that her right hand was not as numb after the surgery.

However, the ALJ correctly identified record evidence showing that in March 2008 Perez had been satisfied with the relief provided by the carpal tunnel surgery on her right wrist, the methotrexate seemed to help her generalized arthritic symptoms such as stiffness and generalized pain, and she had received temporary relief from epidural steroid injections. Five days after the January 2008 carpal tunnel surgery Perez had reported that she could tell a difference already, her fingers did not feel tingly, and the deep pain was better.

The ALJ also found Perez's allegations regarding the severity of her depression lacked credibility. He stated specific, clear, and convincing reasons for his finding, such

- 11 -

as she has not required inpatient psychiatric hospitalization, her course of treatment has generally been conservative, and her thought processes were normal despite her depressed mood.

### C. The ALJ Did Not Err by Failing to Include a Function-by-Function Assessment in the Residual Functional Capacity Determination.

A claimant's residual functional capacity is "what an individual can still do despite his or her limitations." Social Security Ruling 96-8p. The residual functional capacity determination is "a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id.* The ALJ found that Perez "has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except [she] is limited to simple, unskilled work." Although this residual functional capacity determination is not a function-by-function assessment as would be required for finding at step four that Perez could still perform her past relevant work, it is adequate for finding at step five that jobs exist in significant numbers in the national economy that she can perform.

Social Security Ruling 96-8p explains:

> At step 4 of the sequential evaluation process, the [residual functional capacity] must not be expressed initially in terms of the exertional categories of "sedentary," "light," "medium," "heavy," and "very heavy" work because the first consideration at this step is whether the individual can do past relevant work as he or she actually performed it.
>
> [Residual functional capacity] may be expressed in terms of an exertional category, such as light, if it becomes necessary to assess whether an individual is able to do his or her past relevant work as it is generally performed in the national economy. However, without the initial function-by-function assessment of the individual's physical and mental capacities, it may not be possible to determine whether the individual is able to do past relevant work as it is generally performed in the national economy because particular occupations may not require all of the exertional and nonexertional demands necessary to do the full range of work at a given exertional level.
>
> At step 5 of the sequential evaluation process, [residual functional capacity] must be expressed in terms of, or related to, the exertional categories when the adjudicator determines whether there is other work the individual can do. However, in order for an individual to do a full range of work at a given level, such as sedentary, the individual must be able to perform

- 12 -

substantially all of the exertional and nonexertional functions required in work at that level. Therefore, it is necessary to assess the individual's capacity to perform each of these functions in order to decide which exertional level is appropriate and whether the individual is capable of doing the full range of work contemplated by the exertional level.

Social Security Ruling 96-8p. "Preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

Here, the ALJ determined at step four that Perez could not perform her past relevant work. Therefore, failure to articulate which functional limitations precluded her past relevant work, if error, is harmless.

The residual functional capacity assessment implicitly identifies an exertional limitation and a nonexertional limitation, each of which incorporates a conclusion that Perez can perform the full range of work within the implied limitation. First, Perez's residual functional capacity is limited to "light work as defined in 20 CFR 404.1567(b) and 416.967(b)":

> (b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b). The ALJ apparently concluded that Perez is able to perform light work without any exertional limitation other than those stated in the definition of "light work." The assessment that Perez is physically able to perform the full range of light work is supported by the opinions of two State examining physicians, to which the ALJ assigned significant weight. One opined that she was able to sit, stand, walk, lift, carry, handle objects, hear, speak, and travel without problem. The other opined she would be able to stand and walk 6-8 hours in an 8-hour workday given frequent and

- 13 -

routine breaks, lift and carry 25 pounds frequently and 50 pounds occasionally, and climb stairs frequently.

Second, Perez's residual functional capacity is limited to unskilled work, which is defined as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a). The ALJ apparently concluded that Perez is able to perform unskilled work without any nonexertional limitation other than those stated in the definition of "unskilled work." The assessment that Perez is mentally able to perform the full range of "simple, unskilled work" is supported by the opinion of a State psychology consultant to which the ALJ assigned significant weight. The consultant found Perez had moderate work-related medical limitations, but no marked, *i.e.*, preclusive, limitations and opined that Perez appeared capable of performing "simple to semi-skilled work."

IT IS THEREFORE ORDERED affirming the final decision of the Commissioner of Social Security denying Elizabeth Perez disability benefits.

IT IS FURTHER ORDERED that the Clerk enter judgment in favor of Defendant against Plaintiff and that Plaintiff take nothing. The Clerk shall terminate this action.

DATED this 28th day of November, 2011.

_____
Neil V. Wake
United States District Judge